1

2

3

4   UNITED STATES DISTRICT COURT

5   EASTERN DISTRICT OF WASHINGTON

6   DONALD W. GRAY,

7      Plaintiff,                     NO.  CV-13-00187-JLQ

8   v.                                MEMORANDUM OPINION AND
                                      ORDER RE:  MOTIONS FOR
9   CAROLYN W. COLVIN,                SUMMARY JUDGMENT
    Commissioner of Social Security,
10
       Defendant.
11

12       BEFORE THE COURT are Cross-Motions for Summary Judgment.  (ECF

13   NO. 18 & 20).  Plaintiff is represented by attorney **Dana C. Madsen**.  Defendant

14   is represented by Assistant United States Attorney **Pamela J. DeRusha** and

15   Special Assistant United States Attorney **Nancy A. Mishalanie**.  This matter was

16   previously before Magistrate Judge John T. Rodgers.  It was reassigned to the

17   undersigned for all further proceedings on January 3, 2014.  The court has

18   reviewed the administrative record and the parties' briefs.  The case was submitted

19   for decision without oral argument via Order of this court on February 4, 2014.

20       This court's role on review of the decision of the Administrative Law Judge

21   (ALJ) is limited.  The court reviews that decision to determine if it was supported

22   by substantial evidence and contains a correct application of the law.  *Valentine v.*

23   *Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  This court is

24   obligated to affirm the ALJ's findings if they are supported by substantial

25   evidence and the reasonable inferences to be drawn therefrom.  *Molina v. Astrue*,

26   674 F.3d 1104, 1110-11 (9th Cir. 2012).  Substantial evidence is such relevant

27   evidence that a reasonable mind might accept as adequate to support the

28   conclusion.

## I.  JURISDICTION/PROCEDURAL HISTORY

Plaintiff, Donald W. Gray, applied for disability insurance benefits and supplemental security income on October 28, 2010, when he was 46 years-old. Plaintiff's claims were denied initially and upon reconsideration.  Plaintiff requested a hearing and a hearing was held on April 24, 2012, before Administrative Law Judge Moira Ausems. (Transcript of hearing at ECF No. 12-2, p. 47-78).  On June 21, 2012, the ALJ issued an opinion denying benefits. (ECF No. 12-2 at 25).  Plaintiff appealed that decision to the Appeals Council and on March 26, 2013, the Appeals Council denied review. (*Id*. at 1). The decision of the ALJ became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed the instant action on May 20, 2013.

## II.  SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities?  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is, benefits are denied.  If he is not, the decision

maker proceeds to step two.

Step 2: Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the inquiry proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### III. STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the role of the trier of fact, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

### IV. STATEMENT OF FACTS

The facts are contained in the medical records, administrative transcript, and the ALJ's decision, and are only briefly summarized here. At the time the ALJ issued her decision in 2012, Plaintiff was 47 years-old. Plaintiff has a high school education. Plaintiff has past work history as a home attendant/caregiver, janitor, cleaner/housekeeper, and delivery route truck driver. Plaintiff claimed disability based primarily on lower back pain and depression. Plaintiffs' most recent work history was as a caregiver to his wife after she had a stroke in 2002. (ECF No. 12,

p. 52).  She passed away in 2008 (*Id.* at 61), and Plaintiff understandably alleged this contributed to his depression.  Plaintiff has two children, both in their late-teens, one who was still residing with Plaintiff at the time of the hearing. (*Id.* at 57-58).

## V.  COMMISSIONER'S FINDINGS

The ALJ found at **Step 1** that Plaintiff had not engaged in substantial gainful activity since August 21, 2007, the alleged onset date. (ECF No. 12-2, p. 27).  The ALJ noted that the medical records mentioned some intermittent work activity between December 2008 and August 2010, but that work did not amount to substantial gainful activity.

At **Step 2**, the ALJ found the medical evidence established the following severe impairments: history of remote lumbar injury with reports of low back pain; right upper extremity ulnar neuropathy, obesity, headaches, hypertension, and depression (ECF No. 12-2, p. 28).

At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the Listings as described in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)) . The ALJ specifically considered sections 1.00, 11.00, and 12.00 pertaining to the musculoskeletal system, neurological, and mental disorders.  The ALJ further specifically considered Plaintiff's mental impairment and found it did not meet Listing 12.04 (affective disorders).

At **Step 4**, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and found Plaintiff had the RFC to perform light work.  The RFC also contained additional limitations to account for Plaintiff's physical and mental impairments. (ECF No. 12-2, p. 32).  The ALJ then concluded that Plaintiff was capable of performing his past relevant work as a cleaner/housekeeper.

At **Step 5** the ALJ concluded, relying on the testimony of a vocational expert, that Plaintiff was capable of performing other work that exists in

significant numbers in the national economy.  Specifically, the vocational expert identified the jobs of mail clerk, office helper, and production assembler. (ECF No. 12-2, p. 35).

The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date of August 21, 2007, through the date of the decision, June 21, 2012.

## VI. ISSUES

Plaintiff identifies only one primary issue for review: 1) did the ALJ err in assessing Plaintiff's credibility?  Plaintiff claims that the ALJ gave insufficient reasons for discrediting his testimony, and if such testimony was credited, it would establish that he was "more limited from a physical and psychological standpoint than the ALJ determined". (ECF No. 18, p. 7).  The Defendant's brief identifies two issues for review: 1) Plaintiff's credibility assessment; and 2) new evidence in the form of the opinion of Dr. Pollack. (ECF No. 20).  Plaintiff's brief suggested, in the alternative and without much discussion, that Dr. Pollack's post-hearing evaluation could merit remand. (ECF No. 18, p. 10).  Therefore, the court will address these two issues.

## VII. DISCUSSION

A. **Did the ALJ Err in Assessing Plaintiff's Credibility**?

The ALJ found that Gray's medically determinable impairments could be expected to produce the alleged symptoms, but that he was "not entirely credible due to the paucity of findings to support the claimant's claim of total disability. (ECF No. 12-2, p. 34).  The ALJ then gave numerous reasons for her credibility determination.

In deciding whether to accept a claimant's subjective symptom testimony, the ALJ "must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  The *Cotton*

analysis comes from the Ninth Circuit's opinion in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), and thereunder the claimant must: 1) produce objective medical evidence of an impairment or impairments; and 2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82. If a claimant meets the *Cotton* test, then the ALJ may reject the claimant's testimony regarding the severity of symptoms only based on specific, clear, and convincing reasons. *Id.* at 1284.

The ALJ stated that the evidence of record lacked diagnostic studies objectively confirming lumbar degenerative disc disease, and that Plaintiff's treatment history was not significant, other than an ongoing prescription for narcotics. (ECF No. 12-2, p. 34). The ALJ noted that no nerve conduction studies were performed for the right ulnar neuropathy. (*Id.*). The ALJ noted that as to his depression, Plaintiff had not sought mental health counseling and that he appeared to be having no significant problems with his activities of daily living. (*Id.*).

The ALJ also stated she "suspects a deep disability conviction and possible motivation by secondary gain in light of his family's income about to be coming to a halt as his son turns 18." (*Id.* at 34).

The ALJ also noted Plaintiff's testimony concerning his positive urinalysis for marijuana, which was in violation of his pain contract. Plaintiff "testified he did not smoke marijuana, but had a neighbor who blew smoke in his face and his urinalysis came up positive because of that." (*Id.* at 33). The ALJ also noted that Dr. Akpamgbo had written that Plaintiff had not been completely honest with her and had not divulged that he broke a pain contract with a prior physician. (*Id.* at 30).

The ALJ's primary reason for finding Plaintiff not entirely credible was a finding that Plaintiff's subjective testimony was not consistent with the objective findings. This finding is amply supported by substantial evidence. Plaintiff saw

Dr. Jane Akpamgbo in November 2010, and reported that he had been using a U-Haul to help his girlfriend move and had hurt his lower back.  Dr. Akpamgbo discussed with him that he had not been cooperative on prior visits, and she emphasized the importance of him quitting smoking if the pain medication was going to be effective.  Dr. Akpamgbo noted at an exam in October 2010, that Plaintiff reported his pain level as an 8 or 9 "however, Donald was quite comfortable and did not appear to be in that much pain at all." (ECF No. 12, p. 433).

Dr. Chandler, who examined Plaintiff in January 2011, for purposes of a psychological diagnosis, wrote that "no pain behaviors were observed during the session." (ECF No. 12, p. 439).  Plaintiff informed Dr. Chandler that he was not currently taking any medication for depression and he had never received inpatient or outpatient mental health treatment. (*Id.* at 440).  Dr. Chandler did **not** diagnose Plaintiff with depression.  In fact, she concluded: "Evidence suggests a cognitive ability to adapt and function appropriately within a work setting and sustain concentration and attention over the course of a traditional 8-hour/5-day workweek." (*Id*. at 442).

Plaintiff also underwent a physical exam with Dr. Peter Weir on January 18, 2011.  Dr. Weir noted that Plaintiff did "not appear in discomfort" during the exam, and "did not exhibit pain behavior" during the exam. (*Id*. at 446-447).  Dr. Weir's range of motion exam concluded that Plaintiff's hip, knee, ankle, and shoulder joints were all within normal limits.  Dr. Weir concluded:

> The claimant's complaints are subjective in nature.  His physical examination is unremarkable and there are not objective findings in support of his subjective complaints.  On the basis of my examination today, I am unable to justify limiting the claimant's ability to function in the workplace. In my opinion, there are no functional limitations.

(Id. at 448).

The ALJ's conclusion that Plaintiff's subjective complaints were not

supported by the objective medical findings is supported by the record.  The ALJ also expressed concern that Plaintiff was motivated by secondary gain.  In certain circumstances such motivation can be an independent basis for discounting a claimant's credibility.  See *Coleman v. Colvin*, 524 Fed.Appx. 325 (9th Cir. 2013)("an independent reason exists for rejecting [claimant's] testimony (i.e., that Ms. Coleman may be motivated by secondary gain), and Ms. Coleman offers no argument to reject this reason.").  Here, Plaintiff had testified that his primary income was social security benefits that his minor son received after his wife's death and that his son was going to be turning 18 a few months after the hearing. (ECF No. 12, p. 67).  That reason, standing alone, would not be sufficient to support the ALJ's credibility determination.

However, the ALJ's credibility determination was based primarily on an assessment that Plaintiff's subjective reporting was not consistent with the objective medical findings.   The ALJ also noted Plaintiff's odd testimony about his positive test for marijuana use, and Dr. Akpamgbo's note that he had not been forthright about violating his pain contract.  The foregoing are specific, clear and convincing reasons supported by the record.  It is the role of the ALJ to assess credibility and weigh the evidence, "[w]here the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

B. **Does Dr. Pollack's Post-Hearing Evaluation Merit Remand**?

Plaintiff saw Dr. Dennis Pollack, a clinical psychologist, for an examination twice in October 2012.  This was approximately six months after the hearing before the ALJ, and four months after the ALJ's decision.  Plaintiff submitted Dr. Pollack's evaluation to the Appeals Council.  The Appeals Council acknowledged receipt of Dr. Pollack's November 13, 2012 report, and it was made part of the record. (ECF No. 12, p. 5). Therefore, this court may consider Dr. Pollack's report as part of the record. *Brewes v. Commissioner*, 682 F.3d 1157 (9th Cir. 2012).

However, the Appeals Council may consider new and material evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 CFR § 416.1470.

Dr. Pollack did not diagnose Plaintiff with depression. However, he did diagnose him with a pain disorder and a learning disorder. (ECF No. 12, p. 458). Dr. Pollack's report appears to be based largely on Plaintiff's subjective reporting. The report does not indicate that Dr. Pollack reviewed past medical records. Dr. Pollack did administer three tests: intelligence, personality, and neuropsychological. Dr. Pollack's assessment of Plaintiff's condition was after the ALJ's decision, and nearly three years after the expiration of his last insured status date for disability insurance benefits under Title II, which occurred in December 2009.[1] The ALJ's conclusion was that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date of August 21, 2007, through the date of the decision, June 21, 2012.

Dr. Pollack's later assessment does not impact and is not relevant to the ALJ's assessment. Dr. Pollack's report reflects that Plaintiff was referred to him by Plaintiff's attorney. A brief review of relevant case law reflects that it is not uncommon for a claimant to be referred to Dr. Pollack after receiving an unfavorable decision from the ALJ. In Stokely v. Colvin, 2013 WL 1819688 (E.D. Wash. 2013), Plaintiff saw Dr. Pollack nearly a year after the ALJ's adverse decision and the court, per Judge Imbrogno, stated: "Because this evidence was acquired almost a year after the ALJ rendered her decision, it is neither relevant nor probative to Plaintiff's mental condition for purposes of this review." Similarly, in Merriweather v. Colvin, 2013 WL 4498748 (E.D. Wash. 2013),

---

[1] Plaintiff was also seeking supplemental security income (SSI) under Title XVI. There is no onset date requirement for his SSI application. *Waggoner v. Barnhart*, 49 Fed.Appx. 708 (9th Cir. 2002).

ORDER - 10

Plaintiff was examined by Dr. Pollack four to six months after the ALJ's decision. That court stated: "Dr. Pollack's findings and conclusions are not relevant to the period at issue and are tainted significantly by Plaintiff's unreliable self-report." In yet another case, the court, per Judge Nielsen, found that the ALJ's conclusion that "marked limitations are a consistent factor in Dr. Pollack's reports and are inconsistent with his own narrative as well as with the longitudinal records," was supported by substantial evidence. *Stearns v. Colvin*, 2013 WL 3244805 (E.D. Wash. 2013).

Even if Dr. Pollack's evaluation was relevant, it is not of much assistance to Plaintiff. Dr. Pollack assessed 20 different areas of potential mental functional limitation on a check box form. In 13 of those categories, he found no limitation. In another 5 categories, he found only mild limitation. In only two categories: 1) ability to perform activities within a schedule, maintain attendance and punctuality, and 2) ability to complete a normal workday and work week without limitations, did Dr. Pollack find "marked limitations". (ECF No. 12, p. 459-462).

Ultimately, Dr. Pollack's conclusions are based almost exclusively on Plaintiff's subjective reporting, which the ALJ found not entirely credible. A physician's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*. 427 F.3d 1211, 1217 (9th Cir. 2005) see also *Buckner-Larkin v. Astrue*, 450 Fed.Appx. 626 (9th Cir. 2011)("if the ALJ determines that the subjective complaints of the claimant are not credible, that is sufficient reason for discounting a physician's opinion that is based on these complaints.") citing *Bray v. Commissioner*, 554 F.3d 1219 (9th Cir. 2009).

The post-hearing evaluation and report do not merit remand. See *Quesada v. Colvin*, 525 Fed.Appx. 627 (9th Cir. 2013)("the district court properly concluded that the additional evidence [claimant] submitted to the Appeals Council would not have changed the outcome in the case because it post-dated the ALJ's decision and therefore was not relevant.").

1

### VIII. CONCLUSION

2    The Commissioner's and ALJ's decision is supported by substantial

3   evidence in the record and is based on proper legal standards. It must therefore be

4   affirmed.  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

5    **IT IS HEREBY ORDERED:**

6    1.  Plaintiff's Motion for Summary Judgment (ECF No. 18) is **DENIED**.

7    2.  Defendant's Motion for Summary Judgment (ECF No. 20) is

8   **GRANTED.**

9    3.  The Clerk is directed to enter Judgment dismissing the Complaint and

10   the claims therein with prejudice.

11    **IT IS SO ORDERED**.  The District Court Executive is directed to file this

12   Order, enter Judgment as directed above, and close this file.

13    DATED this 18th  day of February, 2014.

14                    s/ Justin L. Quackenbush
15                  JUSTIN L. QUACKENBUSH
                SENIOR UNITED STATES DISTRICT JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 12